ELIZABETH GRANT ET AL., APPELLANTS, v. BETTIE HOVER ET AL., APPELLEES.

FILED SEPTEMBER 27, 1919. No. 20522.

1. **Wills:** CONSTRUCTION: INCONSISTENT CLAUSES. The settled rule of law is that, if a deed or will conveys an absolute title in fee simple, an inconsistent clause in the instrument attempting merely to limit that title or convey to the same person a limited title in the same land will be disregarded.

2. ———: ———: INTENT. When, however, there are different provisions in the same will as to the disposition of specified property, they must be construed together to ascertain the intention of the testator.

3. ———: DEVISE: CONSTRUCTION. The statement in *Loosing v. Loosing*, 85 Neb. 66, "If a testator in his will devises an estate in fee simple, a subsequent clause attempting to devise over any part of that estate is void," is not approved. The devise and the attempt to devise over must be construed together to ascertain whether the testator intended to convey a life estate to one and remainder to another.

4. ———: ———: ———. The clause, "It is my will" that the land devised to his daughters "shall descend to their children or heirs at their death, and this land is willed to them with this charge," although not technically exact, must, in the light of the whole will, be construed to give his daughters a life estate, and the remainder to "their children or heirs."

5. ———: CONSTRUCTION: "CHILDREN OR HEIRS." The words, "children or heirs," are construed, in the light of the whole will and surrounding circumstances, to mean their children, if they leave any, otherwise to their natural heirs.

6. Discussion Disregarded. The discussion in the commissioner's opinion in *Spencer v. Scovil*, 70 Neb. 87, was rejected by the court, and should be disregarded.

APPEAL from the district court for Sarpy county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*E. S. Nickerson* and *William R. Patrick,* for appellants.

*Murphy & Winters, contra.*

SEDGWICK, J.

Arthur M. Remer, deceased, left a will by which he attempted to dispose of his property. He left a widow and several children. By the second and sixth paragraphs, inclusive, of his will, he gave specific property to each of his five daughters. The second paragraph is:

"I give, devise and bequeath unto my beloved daughter Bettie Hover the SW 1/4 of NE 1/4 and the SE of NW 1/4 'Tax Lot 6,' all in section 21, township 14, range 13, subject to the railroad right of way."

And the others are similarly positive and direct in form. The seventh and eighth paragraphs of his will are as follows:

"7th. It is my wish and I hereby order and require that my beloved wife, Rebecca Remer, shall have the full use and benefit of all my lands herein devised, during her natural lifetime, and also the interest of the money now in the bank and that my children shall not enter into possesssion of said land until after my wife's death.

"8th. It is my will and I hereby require, that no part of the land so devised by me to my children, shall be sold by them to any one, during their natural life, and shall descend to their children or heirs at their death, and this land is willed to them with this charge, and this is a part of the consideration for willing the land to them."

The trial court construed this will to give to these daughters a life estate only in the specified lands. The appellants contend that the provisions of the seventh and eighth paragraphs are inconsistent with an absolute title in fee simple as conveyed in the prior paragraphs, and that, therefore, these inconsistent provisions are void and to be disregarded. It has been regarded by the courts that it is impossible to convey an absolute title to real estate in fee simple by deed or will, and at the same time in the same instrument convey to the same person a limited right or title in the same land. It therefore follows that when there was an attempt to do so, and no other disposition of the land was made in the will, the courts, on the theory that real estate must have an owner, rejected the attempt to convey the limited title, and treated the conveyance as of a fee simple title. This theory, so patiently developed by the English courts and subsequently by some of the American courts, has led to some peculiar reasoning in some of the later decisions. This has happened even in some jurisdictions where the law required, as our statute

provides, that wills shall be construed so as to carry out the true intent of the testator. It would seem to be manifest that under this rule of law, if there are two different provisions in the same will as to the interest in specified property conveyed to a certain person, the two provisions would be put together, and, in the light of the other provisions of the will, and the conditions and circumstances surrounding the testator at the time, the true intent of the testator should be determined. If the second and seventh and eighth paragraphs of the will, as above quoted, had been combined in one paragraph, probably no question would be raised as to the quality of the estate conveyed by the will to the daughter Bettie Hover; but the limitation that the seventh and eighth paragraphs place upon the devise in the second paragraph is as clear and emphatic as though the three paragraphs were combined in one, and if we are to ascertain the intent of the testator from the whole will and surrounding conditions, we must conclude that the trial court was right in finding that it was intended to convey to Bettie Hover a life estate in the real estate described in the second paragraph of the will, with the remainder to her children or heirs at her death, and subject to the right of the widow, Rebecca Remer, to have the possession and use of the land during her lifetime.

In *Spencer v. Scovil.* 70 Neb. 87, there is a lengthy opinion if the commissioner discussing abstruse questions of construction, and containing some expressions which have perhaps been misunderstood by some who were interested in the construction of wills. Upon motion for rehearing, the court, after investigation, concluded: "The terms of the will seem plain. We do not see the necessity of applying abstruse rules of construction." No one, therefore, should be misled by any "abstruse rules" suggested in the lengthy opinion

*Loosing v. Loosing,* 85 Neb. 66, has provoked most of the discussion in later cases. In that case it is correctly

said: "We, however, have never held, nor do we believe it to be sound law, that a general restraint against alienation may be successfully attached to an estate in fee simple. Such a limitation is repugnant to the estate conveyed, against public policy, and void." It is also said: "The intent of a testator must control, and will be ascertained from the language of the will aided somewhat by a consideration of the facts and circumstances surrounding the testator as reflected from the evidence, but that intent will not be inferred in flat contradiction to, and in violation of, well-established rules of law." But this is followed by the inaccurate statement derived from *Spencer v. Scovil, supra*: "We are committed to the principle that, if a testator in his will devises an estate in fee simple, a subsequent clause attempting to devise over any part of that estate is void." The devise and the "attempt to devise over" contained in the same will must be construed together, and if together they show an intent to convey a life estate to one and remainder to another, they are not inconsistent and can be enforced. The succeeding statement in the *Loosing* opinion: "The rule does not of necessity apply merely for the reason that the first clause considered by itself might be construed as conveying a fee simple. The later clause, or clauses, may be read in connection with the first one for the purpose of advising the court whether it actually did transfer the fee, and if it does not in itself clearly and unequivocally do so, and by a comparison thereof with the remaining parts of the instrument the court is convinced that the testator did not in fact intend to vest the greater title in the first taker, the instrument will be construed accordingly"—states the rule better. And it is still more accurately stated in the quotation from *Sheets' Estate*, 52 Pa. St. 257: "Subsequent provisions will not avail to take from an estate previously given, qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define

the estate given, and to show that what without them might be a fee, was intended to be a lesser right."

The will in the *Loosing* case said: "I bequeath to my daughter, Louise Loosing (certain lands). This daughter is not to have possession of this property until after the death of my wife. I want it distinctly understood that the property I have herein bequeathed to my two sons and one daughter that they shall not have the right to dispose or mortgage same, but it shall be handed down to their children." And the opinion says: "The subsequent clause  *  *  *  does not indicate a purpose on the part of the testator to cut down the estate first granted, but that the children of the first taker shall inherit from their parents. If the testator intended that William, Fred and Louise should only take a life estate, a remainder could not descend or 'be handed down' from them, and their children could not receive an estate, except from the testator and through his will, and he nowhere in that instrument devises anything to the children of his children.  *  .*  *  He has nowhere provided that such title shall proceed from himself."

This now seems to us as a rather technical construction of the language used, when we consider the whole instrument. If he intended that they should have the title, it must be that he expected them to get it by virtue of his will, and that they would get the title that he himself had when he made the will; and so the title would go to them from himself through the terms of the will. But, however the language there used should be construed, there does not seem to be any doubt as to the language of the will we are construing. He not only wishes, but orders and requires that his wife "shall have the full use and benefit of all my lands herein devised, during her natural lifetime." Clearly the intent was to give the wife a life estate in the land. A title in fee simple includes possession, and "my children shall not enter into possession of said land until after my wife's

death." It would seem a perversion of language to hold that this will gives the entire estate in these lands to the children with immediate possession.

The next clause begins with the words "It is my will." It mentions the land devised to his children, and then says, "shall descend to their children or heirs at their death, and this land is willed to them with this charge." The language is not elegant or technically exact, but if we are only interested in finding how he intended to dispose of his land, and who he intended should have it we cannot think that he was intending to give to his children named more than a life estate therein. He meant that the mother would have the use and benefit of the land during her life, thereafter his children named would have it as long as they lived, and then their "children or heirs" would have the complete title and possession.

A question is raised as to the words, "children or heirs." When the will was made, the devisees of the life estate, or at least some of them, had no children. It was then uncertain whether they would have children at the time of his decease or afterwards. He evidently intended to give the land to the children of the devisees, if they left children, but otherwise to their natural heirs —sisters or their descendants.

This appears to be the effect of the judgment entered by the district court, and it is therefore

AFFIRMED.